COMMONWEALTH *vs.* ANGELO ZAKAS & another.[1]

Essex. September 22, 1970. — November 5, 1970.

Present: SPALDING, KIRK, SPIEGEL, & QUIRICO, JJ.

*Jury and Jurors. Practice, Criminal,* Empanelling of jury, Waiver, Opening statement by prosecutor. *Waiver. Conspiracy. Larceny.*

At the trial of an indictment for conspiracy to steal property of a certain corporation, where the judge and counsel explicitly agreed that the jury would be drawn from the same venire as had the jury which by directed verdict had earlier found the defendant not guilty upon a complaint charging larceny of property of the same corporation by

---

[1] Robert Carney has not prosecuted his appeal.

false pretences, failure of the defendant, who was represented by the same counsel at both trials and did not exhaust his available challenges at the later trial, to object to the seating of a juror who had served on the earlier jury until after the defendant had declared himself content with the jury drawn and the judge had interrupted the prosecutor's opening and advised counsel of such prior service, was a waiver of the defendant's right to make such objection, and there was no reversible error in the judge's ordering the trial to proceed. [267–268]

An indictment for conspiracy to steal in the form prescribed in G. L. c. 277, § 79, was valid without a statement of the means to be used to effect the larceny. [268]

Upon an indictment for conspiracy to steal, alleged by the prosecutor to have been accomplished "by reason of false pretences," conviction of the defendants was warranted by evidence that they combined with the intention to steal; proof that they accomplished all of the essential elements required for a conviction of larceny by false pretences was not essential. [268–269]

At the trial of an indictment for conspiracy to steal property of a health and social club in a city, evidence warranted findings that the defendant participated with the president of the board of aldermen of the city, who was not a member of its licensing board, in a scheme to steal money of the club by impliedly and falsely representing that they had the power to obtain a liquor license for the club, and that the defendant, who received money of, and free membership cards in, the club from an officer thereof, was guilty of the crime charged. [271]

INDICTMENT found and returned in the Superior Court on September 10, 1969.

The case was tried before *Sullivan*, J.

*Paul Resnick* for the defendant Zakas.

*John J. Jennings*, Assistant District Attorney, for the Commonwealth.

KIRK, J. The defendants Zakas and Carney were indicted for conspiracy to steal property of Teremo, Inc., of the value of more than $100, and were found guilty at a trial subject to G. L. c. 278, §§ 33A–33G, inclusive. Both appealed. Only Zakas, however, has perfected and prosecuted his appeal.

Zakas assigns two errors: (1) A juror who sat on the convicting jury had earlier during the same sitting served on a jury which by a directed verdict found Zakas not guilty of larceny by means of false pretences of property of Teremo, Inc. (2) The denial of Zakas's motion for a directed verdict of not guilty on the conspiracy charge.

Commonwealth *v*. Zakas.

1. There was no reversible error in the first assignment. It is not disputed that Zakas represented by the same counsel had been put to trial earlier in the sitting of the Superior Court as the sole defendant on a complaint charging him with larceny by means of false pretences.[2] When the conspiracy indictment was called the judge and counsel explicitly agreed that the jury would be drawn from the same venire as had the jury for the larceny trial of Zakas.[3]

After the jury had been declared indifferent, one juror following a bench conference was excused by the judge. Carney declared himself content and Zakas challenged one juror on the panel. The replacement jurors were declared indifferent; none was challenged; the jury were sworn; the indictment was read and the Commonwealth's opening began. The judge interrupted the opening and advised counsel that one of the jurors (not a replacement) had sat on the earlier Zakas trial. Carney stated that he was not a party to the earlier trial and would object to any juror being excused. Zakas said he objected to the juror remaining on the panel. The colloquy with the judge was beyond the hearing of the jurors. The judge ordered the trial to proceed. Zakas excepted. The exception is without merit.

No one contends that Zakas, by consenting to draw the jury from the entire venire, became bound to accept as a juror one who had sat on his earlier trial. We hold, however, that he was bound to use reasonable diligence to ensure that he had an impartial jury, exercising, if he so desired, the right to exclude members of the earlier jury by peremptory challenges or challenges for cause. Rule 48 of the Superior Court (1954). Indeed, Zakas had exercised a peremptory challenge. He had not exhausted his peremp-

[2] It is likewise not disputed that in the District Court Carney had been found not guilty of larceny by false pretences.

[3] THE COURT: "Now, I think the record ought to show that both defendants are familiar with the fact that this is the same jury venire that heard the Zakas case, Commonwealth against Zakas. They agreed that they would go forth with the same jury venire." COUNSEL FOR ZAKAS: "There is no objection to it on behalf of Defendant Zakas, sir." COUNSEL FOR CARNEY: "Likewise Defendant Carney." THE COURT: "There is no objection to going forward with it." COUNSEL FOR ZAKAS: "No." COUNSEL FOR CARNEY: "None."

tory challenges when he declared that he was content with
the jury. Zakas had the means and ample opportunity to
ascertain whether a juror had been on the earlier panel and
to determine if for that reason the juror was objectionable.
His failure seasonably to object was a waiver of his right to
object. Zakas's late objection came only after the codefen-
dant Carney stated his opposition to excusing any sitting
juror, and was a reversal of Zakas's earlier position, possibly
designed to pose a dilemma for the judge. In a situation
quite similar to the one before us, it was held that the right
to challenge a particular juror is conclusively waived if no
objection is made at the time the jury are empanelled and
if the basis of the objection is known or might have been
known or discovered by reasonable diligence, or if the party
is otherwise chargeable with knowledge of the ground of the
objection. *Batsell* v. *United States,* 217 F. 2d 257, 260
(8th Cir.), generally recognized as a leading case on the
point. *Leonard* v. *United States,* 378 U. S. 544, relied upon
by Zakas, is distinguishable. In the *Leonard* case, the prior
trial proceeded to a verdict of guilty by a jury, one of whom
sat on the subsequent trial of the defendant and joined in an-
other guilty verdict. See cases collected in 6 A. L. R. 3d 551.

2. The evidence was sufficient to support verdicts of
guilty of the crime charged in the indictment. The indict-
ment was in the form provided by statute. G. L. c. 277,
§ 79. The indictment did not state, and there is no require-
ment that it state, the means to be used to effect the larceny.
There was no motion for a bill of particulars. In the final
sentence of his opening statement, however, the assistant
district attorney stated that the evidence would show that
the defendants conspired to steal the money "by reason of
false pretenses."

This statement did not enlarge the indictment or add an
element to it. The statement merely informed the jury
that the Commonwealth, in support of the indictment charg-
ing conspiracy to steal, would produce evidence that the de-
fendants planned to accomplish the theft by a false pretence.

The essence or gist of the alleged offence is that Zakas

and Carney agreed or conspired together to steal money by their combined action. It is not essential, as Zakas contends, that on a conspiracy charge the Commonwealth prove that the defendants accomplished all four of the essential elements of the crime of larceny by false pretences as is the case when the substantive crime is charged. See *Commonwealth* v. *Leonard*, 352 Mass. 636, 644–645.

It is sufficient if it be shown to the satisfaction of the jury that the defendants combined with the intention to steal. Proof of their intention may be shown by circumstantial evidence. *Commonwealth* v. *Schnackenberg*, 356 Mass. 65, 73–74. The means resorted to by the defendants may be strong evidence of the larcenous intent.

We summarize the evidence. In June, 1969, Teremo, Inc. of Beverly (Teremo) a health and social club, applied to the liquor licensing board of Beverly for a license. The clerk of Teremo was John Morgan. During the week following the application Morgan had conversations with the defendant Zakas's sister about the purchase of furniture for the club. Zakas's sister mentioned the application for a liquor license. As a result of these conversations Morgan telephoned to Zakas at his place of business on Monday, June 23. Zakas invited Morgan to come to his office alone. Zakas was in the real estate business and employed Carney, the codefendant, as a salesman on a commission basis. Carney was president of the board of aldermen of Beverly. As such he had no position on the Beverly licensing board and had no power to vote for or against the granting of a liquor license in the city. When Morgan arrived at Zakas's office shortly after noon on the twenty-third of June, Carney was there and the three men remained together in the small office during the conversation which followed.

In response to a question about how the application was progressing, Morgan said he would not know until after the hearing. Zakas asked Morgan what he wanted him to do about it. Morgan said that he did not know what Zakas meant. Carney then telephoned the city clerk and conversed with him. At the conclusion of the telephone con-

versation Carney told Morgan that there was opposition to the application, that there were only two licenses available and that the hearing was set for the following Monday. Carney told Morgan that it would probably cost $3,000 to get the license. Morgan said that his people did not have that kind of money. Carney replied that maybe it would only cost $1,000. Zakas commented that the people they would contact could prevent them from getting the license as well as get it for them. Zakas added that he wanted some free memberships in the club for himself and others, including Carney.

During each of the three days following their initial meeting, Morgan called Zakas but learned that nothing more had been done about the license. On the fourth day, Friday, at the behest of Carney and Zakas, Morgan met Zakas alone and was told by Zakas that he and Carney "were out the night before with the people that they had wanted to talk to and that it cost him about $35. or $40. wining and dining, everything was all set. It would cost us $2,500 for the license." When Morgan said they did not have the money, Zakas offered to lend Morgan the money for two or three weeks, and to then arrange a loan at a credit bureau in Peabody if Morgan did not have the money. Zakas also said the money would have to be paid before the hearing on the following Monday.

Subsequent to the Friday meeting, Morgan contacted two other officers of Teremo, the chairman of the licensing board and the State police. A plan was then formulated to raise $800, record the serial numbers of the bills, put the money into an envelope, and have Morgan meet Zakas at the club on Sunday.

Morgan told Zakas that he would have $800 for him the next day at the club and the balance before the meeting on Monday. He asked that Carney be with him but was told that Carney did not wish to be seen at the club before the license was issued.

On Sunday morning, Zakas went to the club, counted the money in the envelope and assured Morgan that he was

ninety-nine per cent certain that the license would be obtained. Zakas remonstrated with Morgan for having put the names Zakas and Carney on the envelope and said he would cut them out himself. At the same time, Zakas asked for and received ten membership cards in the club. The customary charge was then $125 for a family membership, $75 for a male individual, and $40 for a female. Zakas then left. Morgan followed him to the porch and by signal indicated to State Police Detective James E. Leary, who was waiting outside, that Zakas had the money.[4] Leary then arrested Zakas. When the envelope with the $800 was taken from Zakas he explained it as repayment of a loan he had made to Morgan and said he had been carrying it around for one or two days. However, it had been in Detective Leary's hands at 9 A.M. that same day. After being informed that Detective Leary could give him the serial numbers of the bills in the envelope and after being asked who Carney was, Zakas said no more.

No extended discussion is necessary to point out that a jury could find from the foregoing evidence that Zakas participated with Carney in a scheme to steal money by impliedly and falsely representing that they had the power to obtain a liquor license.

*Judgment affirmed.*

---

[4] Of the $800 received by Zakas $410 was in cash from Teremo Club and the balance from individuals who were members of or interested in the club.