## COMMONWEALTH vs. RAUL M. RUIZ.

Bristol.   January 24, 1986. — June 3, 1986.

Present: ARMSTRONG, KAPLAN, & WARNER, JJ.

*Evidence,* Prior conviction, Judicial discretion. *Witness,* Impeachment. *Practice, Criminal,* Impeachment by prior conviction, Judicial discretion.

At the trial of an indictment for unarmed robbery during which, over the defendant's objection, evidence of his prior criminal convictions of armed assault with intent to rob, armed robbery while masked, and firearms offenses was received for purposes of impeaching his credibility as a witness, there was reversible error in the judge's confining his judgment to the issue whether the statutory requirements for admissibility of the convictions had been met, while failing to consider, in his discretion, whether and to what extent to admit the evidence. [301-302]

Discussion of factors relevant to a judge's discretionary determination at a criminal trial whether the danger of unfair prejudice by reason of admitting evidence of a defendant's prior criminal convictions would outweigh the probative value of this evidence for the purpose of impeaching the defendant's credibility as a witness. [302-304]

INDICTMENT found and returned in the Superior Court Department on May 30, 1984.

The case was tried before *Robert S. Prince,* J.

*Robert L. Sheketoff* for the defendant.

*Dana A. Curhan,* Assistant District Attorney, for the Commonwealth.

KAPLAN, J. We reverse this conviction and remand for a new trial because of the omission of the trial judge to consider in discretion whether or to what extent prior criminal convictions of the defendant should be admitted to impeach his credibility as a witness. We discuss certain factors that may enter into a ruling on this question by the trial judge when the case is retried.

The complaining witness, whom we shall call Rose Croly, driving to her home in Taunton about 4:30 A.M., August 27, 1983, thought she recognized and was acquainted with a man standing on the side of the road. She offered him a lift to his destination, a housing project at 15 Dewert Avenue. It turned out that she did not know the hitchhiker. As Croly came to a halt at the project, two men dragged the hitchhiker out of the car — we do not hear of him again. Croly was abused by four men. One, from the driver's side, pulled her keys from the ignition. Another dragged her from the car on the passenger's side. Three then searched her roughly for money. A fourth, whom she later identified as the defendant, restrained her on the ground by pressing his foot on her chest just below her neck. While the defendant continued his pressure, the others searched the car, finding only a pocketbook with six dollars. As one or more of them asked, "Where's the money, bitch," the defendant pushed Croly's face to the ground. She commenced to throw coins from her pocket and to scream. The three fled. The defendant continued to hold Croly down for perhaps a minute, then joined the rest in flight.

Croly found help to drive her to a police station where she reported the mugging. With a police officer, she returned that morning to the scene, but her keys and other belongings could not be found. Later some youths of the Dewert area picked up her license and other papers and these the police returned to her.

On August 29, Croly appeared at the police station. She was shown some 200 mug shots of black and Hispanic males. She selected one of them, that of the defendant, as a picture of the man who had held her down with his foot, and whose face she said she had had in view during the attack. The circumstances of the identification were testified to at trial, and the picture of the defendant (sanitized) was admitted in evidence without objection.

It is unnecessary to say more about the case for the prosecution except that, upon cross-examining Croly, defense counsel referred to a conversation she had had with Officer Paul Silveira in which, counsel suggested, she said she didn't get a good

look at her attackers. Croly denied saying this, although conceding that "at certain points" her eyes were closed.

Opening the case for the defense, counsel called Silveira, who testified that Croly said "she couldn't identify who was kicking her because she had her eyes closed."

Juanita Padua, who had been living with the defendant for about ten years, testified that the couple resided in Providence, Rhode Island, from June 22, 1983, to March 15, 1984,[1] and on the night of August 27-28, 1983, the defendant was asleep at home.[2] Finally the defendant took the stand. After confirming Padua's testimony, he denied ever having seen or met Croly or having any connection with the mugging. He said he was unaware of the incident until, in November, 1983, he went to the police station to make a report about an accident that occurred when he was driving a friend from Providence to 15 Dewert Avenue.[3] At that point he was arrested, with eventual indictments for unarmed robbery and for assault and battery, on which he was here standing trial.

On cross-examination of the defendant, the prosecutor, after some questions, inquired whether on April 21, 1976, he, the defendant, had been convicted in the Superior Court in Barnstable County of armed assault with intent to rob and illegal possession of a firearm. The defense objected at sidebar as follows: "I don't think that this is pertinent to the question of whether this man has committed this offense or not. It does not go to his credibility. He is here testifying for everyone to see. This, to me, is prejudicial. If the man is found guilty, maybe this kind of evidence is used to sentence him; but I don't think it should be used to indict him at this time." The

---

[1] However, Officer Paul Smith testified that the defendant said he had moved to Rhode Island in early August.

[2] Padua gave variable testimony about the couple's ownership of a car.

[3] It was brought out on direct examination of the defendant that he had lived at the project for a year and a half or two years before the move to Providence, and he continued to visit at the project whenever Juanita wanted to see her mother. Officer Smith testified that he had seen the defendant at the project about a week before the mugging. Taunton is a short drive from Providence.

Commonwealth responded that the convictions were being offered "to impeach the witness's credibility"; "the Commonwealth understands that the Court may have to make limiting instructions to the jury." The judge inquired what were the convictions the Commonwealth proposed to offer, their dates, and whether the defendant had been represented by counsel. The judge said he was going to overrule the objection and give a limiting instruction. He said: "It's the risk the defendant takes. There was no previous motion in limine provided to this Court. . . . I have a duty to come to the side bench and determine whether or not the offenses that are offered fall within the statutory periods [referring to G. L. c. 233, § 21]. If they do, and being felonies within ten years, once they have been satisfactorily indicated, as based upon certified copies —." The prosecutor said he would be willing to offer certified copies for identification. The judge said: "That's all right. We'll mark them for identification afterwards, but now you may proceed." The judge then instructed the jury that the convictions went only to credibility and only to the degree that the jury might think warranted.

Further convictions of the defendant on October 9, 1980, of armed robbery while masked and of unlawful carrying of a firearm were received in evidence at this point.

In his closing argument the prosecutor did not refer to the defendant's criminal record. The judge in his charge again gave a limiting instruction and he remarked further that the defendant was not required to take the stand and, had he not done so, no unfavorable inference could have been drawn therefrom. There were additional instructions on identification and alibi. Defense counsel indicated he was content with the charge.

The jury found the defendant guilty of the two crimes charged against him. The defendant takes his appeal from the unarmed robbery conviction, claiming error in the judge's treatment and admission of the defendant's previous convictions. The assault and battery conviction was placed on file by consent.

The law of the Commonwealth, as settled after rather pro-
tracted development,[4] is that the judge is required, where the
matter is duly raised, to consider in his discretion whether to
admit a defendant's prior criminal convictions.[5] A failure thus
to consider the question is error and (where the convictions
have been admitted) undermines the trial and calls for reversal
and remand. There may also be reversal where discretion has
been exercised, but abused. See *Commonwealth* v. *Maguire,*
392 Mass. 466, 470 (1984).

The defendant contends that the judge erred in the former
respect. Counsel's objection, quoted above, was put on the
ground that the particular convictions did not bear on the de-
fendant's disposition to tell the truth. This is a reason typically
and properly advanced to move a court to exclude former
convictions. However, the judge did not respond to the sense
and meaning of the objection. The record does not, indeed,
indicate that he thought he must invariably admit all convictions
satisfying the terms of the statute; but it does indicate that he
thought he could follow the statute without more, and was not
obliged to exercise any discretion, where the defendant had
not availed himself of the opportunity to make a motion in
limine to exclude. And so, apart from satisfying himself about
compliance with the statutory terms, the judge made no evalu-
ation of the proffered convictions to inform his discretion.

The record suggests that the judge acted on the belief that
the omission of defense counsel to apply in limine — his
willingness to have the defendant take "the risk" — was an
indication that counsel did not regard the convictions as seri-
ously prejudicial, and therefore the judge could admit the con-
victions without troubling himself further. The predicate for
this conclusion would be unwarranted,[6] and in any event the

---

[4] See especially *Commonwealth* v. *West,* 357 Mass. 245, 249 (1970);
*Commonwealth* v. *Chase,* 372 Mass. 736, 749-750 (1977); *Commonwealth*
v. *Maguire,* 392 Mass. 466, 470 (1984).

[5] Such convictions as are introduced must meet the conditions of recency,
etc., prescribed by G. L. c. 233, § 21.

[6] Counsel's omission to apply in limine is otherwise explained. Such a
motion is usually supported by the assertion that the defendant will forgo

judge would not be relieved of his duty to consider the effect of admitting the past convictions upon the fairness of the current trial.

The judge's failure to exercise judgment here, although perhaps less obvious, is no more tolerable than the failure in *Commonwealth* v. *McFarland,* 15 Mass. App. Ct. 948, 949 (1983) (erroneous assumption that statute was imperative), cited in *Commonwealth* v. *Guilfoyle,* 396 Mass. 1003 (1985) (unclear whether judge recognized he had discretion: errone-ously admitted conviction *because* of similarity to crime being tried). See also *Commonwealth* v. *Knight,* 392 Mass. 192, 194 (1984).

In this trial for unarmed robbery and assault and battery, the judge, as noted, permitted impeachment of the defendant by convictions of armed assault with intent to rob, of armed robbery (while masked), and of two firearm offenses. At re-mand, the question for the judge will be whether "the danger of unfair prejudice" by reason of admitting the convictions would "outweigh[ ] the probative value of the evidence . . . for the purposes of impeachment." *Commonwealth* v. *Maguire,* 392 Mass. at 470. Thus the tendency of a past conviction to suggest that the defendant is an evil recidivist is to be weighed against its tendency to prove that the defendant lacks credibility; and if the former predominates, normally the conviction should not be received.[7]

---

testifying in his own behalf rather than face the convictions on cross-exami-nation. In the present case counsel could not readily make such an assertion because he might well suppose that the defendant had no chance of a verdict if he did not take the stand to contradict Croly. See *Williams* v. *United States,* 394 F.2d 957 (D.C. Cir. 1968) (compare remarks at 961-962 with those in concurrence, at 963-964).

[7] Guides to the weighing process appear in the decisions of *Commonwealth* v. *Diaz,* 383 Mass. 73, 81 (1981); *Commonwealth* v. *Elliot,* 393 Mass. 824, 832-834 (1985), and Justice Lynch, concurring, at 834-835; *Common-wealth* v. *Todd,* 394 Mass. 791, 795-796 (1985). The *Diaz* opinion refers to a well known discussion by Judge Burger, in *Gordon* v. *United States,* 383 F.2d 936, 940-941 (D.C. Cir. 1967), cert. denied, 390 U.S. 1029 (1968) (elaborated in 3 Weinstein & Berger, Evidence par. 609[03], at 609-62 to 609-69 [1985]).

All or most convictions of crime are "probative" to some degree. See Justice Lynch, concurring in *Commonwealth* v. *Elliot,* 393 Mass. 824, 834-835 (1985). The law, however, accepts that there is a diminishing scale of probative value, on the issue of credibility, from deliberate perjury to impulsive assault. So also the law accepts that prejudice mounts as the prior crime resembles more and more the offense being tried. The case for admission is strong when probative value is high and prejudicial effect low; weak, when the contrary is true.

In this light, the present case has difficulties for the trial judge. As an indicator of a disposition to lie, a robbery conviction does not rank with a conviction of perjury; still it is an indicator of substantial weight. As the court noted in *United States* v. *Lipscomb,* 702 F.2d 1049, 1071 (D.C. Cir. 1983), robbery "does involve theft and is a serious crime that shows conscious disregard for the rights of others. Such conduct reflects more strongly on credibility than, say, crimes of impulse, or simple narcotics or weapons possession" (footnote omitted).[8] But robbery "is generally less probative than crimes that involve deception or stealth." *Id.* at 1070-1071.[9] In *Lipscomb* the court admitted a robbery conviction where the crime under trial was possession of heroin with intent to distribute; it reasoned that the prejudice was "not especially great because the previous crime was not similar to the present one." *Id.* at 1071. It referred by way of contrast to *Gordon* v. *United States,* 383 F.2d 936, 940 (D.C. Cir. 1967), cert. denied, 390 U.S. 1029 (1968), and its remark that "convictions which are for the same crime should be admitted sparingly . . .." Our case law from

___

[8] As indicated by the opinion in *Lipscomb,* the firearm convictions in the present case hardly go at all to probativeness.

[9] Under Federal Rule of Evidence 609(a), crimes involving "dishonesty or false statement" are admitted automatically to impeach credibility; others (punishable by death or more than a year's imprisonment) upon a weighing of probative value against prejudicial effect. Upon analysis, which has included examination of the history of the rule, it has latterly been established that the automatic category should be confined to a narrow class of *crimen falsi.* See *United States* v. *Smith,* 551 F.2d 348, 362 (D.C. Cir. 1976); *United States* v. *Grandmont,* 680 F.2d 867, 871 (1st Cir. 1982). Robbery would not be found in the automatic category. *Id.*

the beginning has likewise given warning to be chary of admitting a conviction similar to the crime being tried. See *Commonwealth* v. *DiMarzo,* 364 Mass. 669, 680-682 (1974) (Hennessey, J., concurring).[10]

Faced with a dilemmatic problem where a past crime of relatively high probativeness is similar to the crime on trial, a judge may attempt expedients to soften prejudice. If there is also a conviction on the defendant's record of a dissimilar crime, that one may be admitted, the other excluded. Conviction of a similar offense, if remote in time, may be excluded; especially so if the defendant's record in the interim has been clean. There may be cases where sufficient opportunity exists to put the defendant's credibility to test without recourse to a past conviction, so that justice is served by excluding it. We do not attempt to catalogue the variant possibilities. Of course, in any instance where a past conviction is admitted, limiting instructions should be given and the prosecutor adjured not to lay stress on this impeachment; but our cases recognize that these measures can serve only as a mild palliative where similarity exists between the prior crime and the one tried. See *Commonwealth* v. *Elliot,* 393 Mass. at 834.

A California case presented more or less squarely a straight-out case of robbery/robbery without benefit of any softening expedient.[11] The appellate court held that the trial judge erred in ruling to admit the past robbery conviction; the prejudice due to the similarity simply outweighed probative value. *People* v. *Fries,* 24 Cal.3d 222 (1979) (5-2 decision). We need not express a view about the soundness of the appellate reversal in that case. However, we are free to say that of the members of the panel deciding the present appeal, the writer and Justice Warner, had they been serving as trial judges in the *Fries* case,

---

[10] See also *Commonwealth* v. *Chase,* 372 Mass. at 750; *Commonwealth* v. *Diaz,* 383 Mass. at 81; *Commonwealth* v. *Elliot,* 393 Mass. at 833-834; *Commonwealth* v. *Todd,* 394 Mass. 791, 795-796 (1985); *Commonwealth* v. *Guilfoyle,* 396 Mass. at 1004.

[11] The trial judge had denied a motion in limine to exclude the past conviction and the defendant had not taken the stand. He appealed his conviction. (Compare *Commonwealth* v. *Gonzales, ante* 274 [1986].)

would — they believe — have chosen to exclude the robbery conviction; Justice Armstrong believes he would have admitted it.

*Judgment reversed.*

*Verdict set aside.*