# DECISIONS

OF THE

## SUPREME JUDICIAL COURT

OF

## MASSACHUSETTS

COMMONWEALTH *vs.* STEVEN CASEY (No. 1).

Bristol. April 5, 2004. - June 3, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Child Abuse. Rape. Indecent Assault and Battery. Jury and Jurors. Practice, Criminal,* Jury and jurors, New trial, Assistance of counsel. *Constitutional Law,* Assistance of counsel. *Evidence,* Credibility of witness. *Witness,* Credibility.

At a criminal trial, an alternate juror's presence in the jury room for approximately two minutes and his asking a question was not presumptively prejudicial so as to warrant the allowance of the defendant's motion for a new trial, nor was there a showing that the alternate juror exposed the jury to extraneous matter [4-6]; moreover, the defendant's trial counsel's failure to move for a mistrial and request a voir dire on this matter did not constitute ineffective assistance of counsel entitling the defendant to a new trial [6-7].

The conduct of the victim at a criminal trial in gesturing and smiling to jurors did not amount to an unwarranted intrusion constituting an extraneous influence on the jury, where the judge told the victim that his behavior was inappropriate. [7-8]

This court, in vacating the order of a Superior Court judge granting a new trial in a criminal case, did not reach an argument challenging the sufficiency of the evidence that led to the defendant's convictions, where the judge had not based his order on evidentiary grounds. [8-9]

A criminal defendant claiming ineffective assistance of counsel failed to demonstrate that his trial counsel's failure to investigate whether the victim suffered from a bipolar mental disorder was likely to have unfairly influenced the jury's verdict. [9-10]

INDICTMENTS found and returned in the Superior Court Department on October 16, 1998.

The cases were tried before *Richard J. Chin*, J., and a motion for a new trial, filed on April 17, 2003, and a motion for reconsideration were heard by him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Steven E. Gagne*, Assistant District Attorney (*Carolyn A. Burbine*, Assistant District Attorney, with him) for the Commonwealth.

*David A.F. Lewis* for the defendant.

SPINA, J. The defendant was convicted of rape of a child and indecent assault and battery on a child under the age of fourteen years. More than three years after the convictions, the defendant filed a motion for a new trial raising multiple issues, all of which are included in this appeal. A judge in the Superior Court, who was also the trial judge, ordered a new trial on the ground that an alternate juror had been present during jury deliberations for approximately two minutes and asked a question, and consequently did not reach the other issues raised in the motion for a new trial. The Commonwealth moved for reconsideration of the allowance of the motion for a new trial, urging the judge to conduct an evidentiary hearing to determine whether the alternate juror's presence in the jury room exposed the jury to extraneous influence. The judge denied the motion for reconsideration. The Commonwealth appeals from the order allowing the defendant's motion for a new trial and the denial of its motion for reconsideration. The defendant filed a cross appeal that includes those issues that were raised in his motion for a new trial but not reached in the decision on the motion, plus

another issue. The defendant contends that (1) the victim engaged in conduct during trial that improperly influenced the jury, and counsel was ineffective for failing to address adequately that conduct; (2) the weight of the evidence does not support a conviction because the victim had a motive to accuse the defendant falsely and gave inconsistent accounts; and (3) defense counsel's failure to investigate whether the victim suffered from a bipolar mental disorder amounted to ineffective assistance of counsel. We transferred the case here on our own motion, vacate the order allowing the motion for a new trial, and reinstate the convictions.

1. *Background.* The defendant's convictions arise from several incidents of sexual abuse of his six year old nephew. The defendant lived in the same apartment building as the victim and regularly babysat him while his parents were working. The victim testified that the defendant began sexually abusing him when he was six years old and that the sexual abuse continued on a regular basis two or three times a week until the defendant moved out of the apartment building seven years later. The victim reported the incidents to his mother after the defendant moved out of the apartment building.

Approximately one hour and twenty minutes into deliberations, the jury asked to be reinstructed on reasonable doubt and the elements of rape of a child and indecent assault and battery on a child under the age of fourteen years. After approximately two hours and twenty minutes of further deliberations, the jury reported that they were deadlocked at nine to three in favor of acquittal.[1] The judge instructed the jury conformably with *Commonwealth* v. *Rodriquez*, 364 Mass. 87, 98-99 (1973). The jury continued to deliberate for approximately one hour before deliberations were suspended for the day.

---

[1]The jury made their disclosure in a note sent to the judge. The note was marked for identification but, for unexplained reasons, it is unavailable. The parties attempted to reconstruct the contents of the note but were able to determine only that the jury indicated that they had taken an unofficial vote and were nine to three in favor of acquittal. We infer that the note indicated that the jury were deadlocked because there was no objection to the judge's *Tuey-Rodriquez* instruction in response to the note. See *Commonwealth* v. *Tuey*, 8 Cush. 1, 2 (1851); *Commonwealth* v. *Rodriquez*, 364 Mass. 87, 101-103 (1973) (Appendix B).

The following morning, a court officer informed the judge that the sole alternate juror had accompanied the jury into the jury room at the very beginning of deliberations the previous day. The judge commented that "[i]t probably is grounds for a mistrial," but sought the views of counsel. The defendant's attorney said: "Even though it may be grounds for a mistrial and if the court would entertain, I'd reserve on that question. We've got a jury out." On the prosecutor's suggestion, the judge inquired of the alternate juror. The brief questioning revealed that the alternate juror "walked in for maybe two minutes" after deliberations had begun, asked a question, and then left the jury room. The judge did not ask the alternate juror what he had asked, but concluded that the alternate juror had not "participated in any meaningful way in deliberations." The jury deliberated for approximately two hours and forty minutes on that second day of deliberations before returning guilty verdicts on both charges.

2. *Motion for a new trial.* The Commonwealth argues that the motion for a new trial should not have been allowed because the alternate juror's presence in the jury room for approximately two minutes at the beginning of deliberations, which lasted about seven hours over two days, was not the "intolerable invasion of the jury's privacy that requires reversal." *Commonwealth* v. *Sheehy*, 412 Mass. 235, 239 (1992). In reviewing the allowance of a motion for a new trial, we inquire whether there has been a significant error of law or abuse of discretion. See *Commonwealth* v. *Genius*, 402 Mass. 711, 713-715 (1988).

The defendant essentially argues that an alternate juror's presence in the jury room, regardless of the circumstances, is per se prejudicial, and that a judge must, under art. 12 of the Massachusetts Declaration of Rights, grant a new trial. The defendant relies on three cases, *Commonwealth* v. *Sheehy*, *supra* at 238 (three alternate jurors present during entire deliberations and during vote on verdict); *Commonwealth* v. *Jones*, 405 Mass. 661 (1989) (alternate jurors in jury room for duration of deliberations); and *Commonwealth* v. *Smith*, 403 Mass. 489, 496-497 (1988) (parties agreed to allow four alternate jurors to be present for duration of deliberations). In those cases, new trials were ordered because the alternates had been present for the

duration of deliberations. We said in *Commonwealth* v. *Smith*, *supra* at 496, quoting *State* v. *Cuzick*, 85 Wash. 2d 146, 150 (1975), that "[e]ven if it were determined exactly what [the alternate] did or said, it would be difficult to tell how or whether his actions affected the other jurors." In those circumstances, "it [could not] rightly be said that the 'body language' or even the mere presence of one or more of the four alternates . . . could not reasonably have influenced one of the jurors." *Commonwealth* v. *Smith, supra.*

Where an alternate juror is in the jury room for only a brief period of time, however, prejudice will not be presumed. See *Commonwealth* v. *Sheehy, supra* at 239 ("Minor invasions of the jury's privacy, while regrettable, do not impinge upon the right [to jury trial]"); *Commonwealth* v. *Saunders*, 20 Mass. App. Ct. 917 (1985) (prejudice not presumed where person entered room to retrieve umbrella and commented that it was raining). Here, the alternate juror was present for approximately two minutes at the very start of deliberations. Unlike the cases on which the defendant relies, it cannot be presumed that the alternate juror's presence here constituted an external influence that amounted to prejudice. See *Commonwealth* v. *Saunders, supra* at 917-918. This is especially so where the jury were nine to three in favor of acquittal four hours after the alternate juror had been in the jury room.

Although we conclude that the alternate juror's presence in the jury room was not presumptively prejudicial, a defendant may show that an alternate juror did in fact expose the jury to extraneous matter, namely, "specific facts not mentioned at trial concerning one of the parties or the matter in litigation." *Commonwealth* v. *Fidler*, 377 Mass. 192, 200 (1979). A defendant has the burden of showing that this occurred. *Id.* at 201. If the defendant makes this showing and "the judge finds that the extraneous matter was introduced, the burden then shifts to the Commonwealth to show beyond a reasonable doubt that [the defendant] was not prejudiced by the extraneous matter," and the judge must decide, without inquiry into the thought process of the deliberating jurors, "the probable effect of the extraneous facts on a hypothetical average jury." *Id.*

Here, there has been no showing that the jury were exposed

to extraneous matter. The defendant had the opportunity to move for a mistrial and request a voir dire to determine what the alternate juror asked the deliberating jurors. See *id.* at 198. The prosecutor asked the judge to inquire of the alternative juror what question he asked the jurors, and although the judge failed to inquire, it was the defendant's burden to request such inquiry. *Id.* See *Commonwealth* v. *Dixon*, 395 Mass. 149 (1985). The defendant's failure to pursue the matter when he learned of the alternate juror's presence in the jury room constitutes waiver. See *Commonwealth* v. *DiPietro*, 373 Mass. 369, 387 (1977) (defendant bears burden of seasonably moving for mistrial "when something occurs which constitutes the basis for requesting a mistrial").

The defendant argues that counsel's failure to move for a mistrial and request a voir dire constitutes ineffective assistance of counsel entitling the defendant to a new trial. We disagree. To prevail on this claim the defendant must show that "behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer . . . deprived [him] of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). We accord tactical decisions of counsel "due deference." *Commonwealth* v. *Fisher*, 433 Mass. 340, 354 (2001). Tactical decisions amount to ineffective assistance of counsel only if "manifestly unreasonable when made." *Commonwealth* v. *Martin*, 427 Mass. 816, 822 (1998). We view counsel's decision to forgo the question of extraneous influence and mistrial, despite the judge's suggestion, as a strategic decision based on the jury's disclosure of its "unofficial vote," that revealed they were inclined to acquit. It was not unreasonable to let deliberations take their course where the likely outcome appeared to be an acquittal at best, or a hung jury at worst. At the time, a mistrial offered no advantage over this scenario. Because it offered the certainty of a retrial, it reasonably could be viewed as a disadvantage. The absence of an affidavit from trial counsel on this point is also significant. See *Commonwealth* v. *Serino*, 436 Mass. 408, 415-416 (2002).

Because the defendant failed to show that this minor intrusion by the alternate juror amounted to prejudice, the judge abused his discretion by allowing the motion for a new trial.

See *Commonwealth* v. *Graves*, 363 Mass. 863, 872-873 (1973), quoting *Brown* v. *United States*, 411 U.S. 223, 231-232 (1973) (" 'a defendant is entitled to a fair trial but not a perfect one,' for there are no perfect trials").[2]

3. *Trial conduct of victim.* The defendant contends that he was prejudiced because the judge did not investigate, and defense counsel did not request an inquiry of, the victim's conduct in the presence of the jury at the beginning of the last day of trial. The defendant relies on an affidavit of trial counsel that states that on the second day of jury deliberations, in open court, the victim was within five feet of the jurors and "gesturing and smiling at the jurors [as if] enticing the jury to find [the defendant] guilty." Nothing in the record suggests that the victim said anything to the jurors at the time. After the jury resumed deliberations, defense counsel objected to the victim's conduct and requested that the judge direct the victim to move away from the jury in the event that the jury returned to the court room for any reason other than to render a verdict. At that time the judge informed the parties that he had been notified by a court officer that the victim had also made a comment to the alternate juror in the hallway.

The judge told the victim that his behavior was "inappropriate and you're to have no contact with the jurors, whether it's an alternate or a sitting juror, a deliberating juror. And you probably all should sit up back." This instruction afforded the defendant all the relief he requested. Moreover, based on trial counsel's reaction to the matter, especially his assessment of the victim as someone who "looks and acts much younger than his actual age," we are satisfied that the nature of the incident was sufficiently innocent that it likely did not prejudice the defendant's right to a fair trial, and that further inquiry was not required. See *Commonwealth* v. *Lovett*, 374 Mass. 394, 402

[2]The defendant correctly states that Mass. R. Crim. P. 20 (d) (2), 378 Mass. 889 (1979), requires that alternate jurors be kept separate from the other jurors. As we have stated, the alternate juror's presence in the jury room at the start of deliberations only amounts to a minor intrusion on jury privacy rather than an "intolerable invasion of the jury's privacy that requires reversal." *Commonwealth* v. *Sheehy*, 412 Mass. 235, 239 (1992). Therefore, the violation of rule 20 (d) (2) was only minor in nature and did not amount to reversible error.

(1978). The defendant does not suggest that trial counsel should have requested that the victim be admonished in the presence of the jury and that the jury be specifically instructed to disregard the victim's behavior, which could have been viewed as an overreaction by counsel to what was nothing more than innocuous childlike behavior. The conduct of the victim in the presence of the jury did not amount to an unwarranted intrusion that constituted an extraneous influence on the jury. *Id.* The defendant has not shown that counsel was ineffective for failing to request a further inquiry into the victim's behavior, where there is nothing to suggest that the victim did anything more than what counsel observed.

With respect to the contact between the victim and the alternate juror in the hallway, it could not have affected the verdict because it occurred after the alternate juror had been segregated from the jury.

4. *Weight of the evidence.* The defendant asserts that "the Commonwealth's evidence relied on a [victim] with a strong motive to fabricate and [whose] conflicting stories reflected a lack of truthfulness."[3] He contends that the victim accused the defendant, his uncle, of sexual assault because the victim believed that by doing so the allegations of abuse made by his half-brother against his father somehow would be dismissed and the Department of Social Services would then allow his half-brother to return home. To the extent that the defendant is suggesting that as a matter of law a witness who may have a motive to lie and who gives inconsistent statements is not worthy of belief, the law is otherwise. Credibility is an issue for the jury to decide. See *Kettleman* v. *Atkins*, 229 Mass. 89, 92 (1918), and cases cited.

The defendant also challenges the weight of the evidence that led to his convictions, stating that the "Commonwealth's evidence relied on a [victim] with a strong motive to fabricate." Whether the verdicts are against the weight of the evidence is a

---

[3] In his motion for a new trial, the defendant stated that the victim made inconsistent statements but he did not argue that the victim had a motive to fabricate. The issue was presented at that time as a basis for the claim of ineffective assistance of counsel, and is also thus presented in this appeal. See Part 5, *infra.*

determination best left to the trial judge, who heard the witnesses and observed them testify. See *Commonwealth* v. *Cinelli*, 389 Mass. 197, 205, cert. denied, 464 U.S. 860 (1983). See also Mass. R. Crim. P. 25 (b) (2), 378 Mass. 896 (1979); Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001). The judge's order for a new trial in this case rested solely on the alternate juror incident and not on evidentiary grounds. The cases where we have granted a new trial based on the weight of the evidence are rare, and even rarer where the trial judge has declined to grant a new trial for this reason. See *Commonwealth* v. *Woods*, 382 Mass. 1, 8 (1980).

5. *Effective assistance of counsel.* The defendant argues that defense counsel's failure to investigate whether the victim suffered from a bipolar mental disorder amounted to ineffective assistance of counsel. The defendant claims that an investigation of the victim's mental condition was necessary for his defense, which rested solely on an attack of the victim's credibility. He bases his claim on the following: the victim's half-brother suffered from bipolar mental disorder that caused him to fantasize; the disease is genetically linked; the victim displayed tendencies similar to his half-brother; and the victim had given inconsistent accounts of what occurred, suggesting a tendency to fantasize. We review a claim of ineffective assistance of counsel by determining first whether the alleged conduct falls "measurably below that which might be expected from an ordinary fallible lawyer . . . [and] deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974).

The defendant has not demonstrated that defense counsel's failure to investigate the victim's mental health was "likely to have unfairly influenced the jury's verdict." *Commonwealth* v. *Scott*, 430 Mass. 351, 356 (1999). In order to show ineffective assistance of counsel for failure to investigate whether the victim suffered from a bipolar disorder, the defendant had to show a relationship between the victim's half-brother's diagnosis and the victim's ability to serve as a witness. As the judge noted during the motion for a new trial, the defendant did not produce an affidavit from an expert addressing the victim's mental health or suggesting that he had bipolar disorder. With regard to the

defendant's claim that the victim's inconsistent accounts constituted evidence of bipolarity, there is no expert affidavit to support the claim, and we have said that varying accounts by a child witness about past sexual abuse do not merit an investigation of mental stability. See *Commonwealth* v. *Widrick*, 392 Mass. 884, 888-890 (1984) (psychiatric examination must not be used to usurp jury's function of determining credibility). Nor does the defendant offer any evidence that a diagnosis of bipolar disorder would necessarily render the victim incapable of acting as a reliable witness. See *Commonwealth* v. *Horton*, 434 Mass. 823, 834 (2001).

Finally, the record does not indicate that a motion for production of the victim's medical records would have met the requirements of *Commonwealth* v. *Bishop*, 416 Mass. 169, 181-182 (1993), quoting *People* v. *Gissendanner*, 48 N.Y.2d 542, 549 (1979) (request for documents denied if disclosure would constitute "an unrestrained foray into confidential records in the hope that the unearthing of some unspecified information would enable [the defendant] to impeach the witness"). We have said that "credible information tending to suggest that the complainant has difficulty distinguishing fantasy from reality, might warrant in camera inspection of a complainant's rape counselling records." *Commonwealth* v. *Fuller*, 423 Mass. 216, 226 (1996). Here, there is no indication that the victim exhibited any such symptoms, only that his half-brother may have. The defendant has failed to show that counsel was ineffective.

The order allowing a new trial is vacated and an order shall be entered denying the motion. The original convictions are to be reinstated.

*So ordered.*