Commonwealth *v.* Kamara.

COMMONWEALTH *vs.* BARRY J. KAMARA.

No. 92-P-1802.

Suffolk. October 7, 1994. - December 30, 1994.

Present: FINE, KAPLAN, & IRELAND, JJ.

Further appellate review granted, 419 Mass. 1108 (1995).

*Jury and Jurors. Practice, Criminal*, Deliberation of jury. *Evidence*, Relating to deliberation by jurors.

In the circumstances of a murder trial, in which a juror's remarks during deliberation about the defendant's possible gang affiliation exposed the jury to extraneous matters highly prejudicial to the defendant, inasmuch as no evidence of gang connection or motivation was established and the jury had been instructed to disregard and purge from their minds any reference to gangs, the judge should not have inquired of the jury whether they remained impartial and returned them to deliberations: a new trial was required. [769-773]

INDICTMENTS found and returned in the Superior Court Department on June 7, 1991.

Motions to dismiss and to suppress evidence were heard by *Julian T. Houston*, J., and the cases were tried before *Robert A. Mulligan*, J.

*R. Marc Kantrowitz* for the defendant.

*John P. Zanini*, Assistant District Attorney, for the Commonwealth.

IRELAND, J. On January 22, 1992, a Superior Court jury found the defendant guilty of murder in the second degree and of carrying an unlicensed firearm. On appeal, we focus on the defendant's claim that remarks made by one of the jurors were prejudicial.[1] We reverse.

---

[1]Other arguments made by the defendant are either without merit or are unlikely to arise at any retrial. Specifically, the argument seeking suppression of photographic identifications and subsequent in-court identifications is more properly directed to the weight of the evidence and not its admissibility.

On May 16, 1991, Ronald Taylor was shot at close range on Dakota Street in the Dorchester section of Boston. He died shortly thereafter. The defendant was charged with first degree murder. At trial, defense counsel attempted to demonstrate that none of the Commonwealth's witnesses had been able to identify the defendant as the assailant with any degree of certainty. Each, for example, had given inconsistent or somewhat vague descriptions of the assailant's height, clothing, or complexion. Several had initially failed to pick the defendant out from a photographic array. The primary defense, thus, was misidentification. Defense counsel also offered an alternate theory of the case (although not until well into trial) that one Eric Brown, who was alleged to have shot the victim in February, 1991, from a vehicle may have been the perpetrator. The defendant's only witness, a licensed private investigator, posited that Brown lived near Dakota Street where the shooting took place, in the same direction from the point of shooting in which the assailant reportedly fled after the shooting, and that a vehicle fitting the description of the one in the earlier shooting had been found at Brown's supposed address.

For its part, the Commonwealth repeatedly tried to establish a gang connection to, or motivation for, the shooting. It attempted to do this by showing (1) that the victim was afraid of gangs in the area (specifically the Vamp Hill Kings) and (2) that the defendant was a member of or frequently "hung with" gangs. With few exceptions, the defendant's objections to that line of questioning were sustained. Nevertheless, the assistant district attorney returned time and again to that theme with each witness.[2] No evidence of gang connection or motivation was established, and, accordingly, the Commonwealth was barred from any reference thereto in its closing argument, and the jury was instructed to ignore the subject in its deliberations.

Following the first day of jury deliberations, the jury foreman informed the court of possible misconduct by one of the

[2]See note 7, below.

jurors, who had related certain extraneous information about the defendant to her fellow jurors.[3] After conducting individual voir dire of each juror, the judge dismissed the errant juror and replaced her with an alternate. See G. L. c. 234A, § 39, as inserted by St. 1982, c. 298, § 1 ("The court shall have the discretionary authority to dismiss a juror at any time in the best interests of justice"). Upon instructions from the court, the jury began its deliberations anew and arrived at the guilty verdicts for which the defendant has been sentenced.

We are convinced that the juror's remarks — particularly those concerning the defendant's possible gang membership — poisoned the jury's deliberations. The judge had been at some pains to preclude the Commonwealth during its closing from mentioning the words "gang" or "group" and had specifically instructed the jurors to disregard and purge from their minds any reference to gangs or to the defendant's possible affiliations with gangs.

The central problem here is the jury's exposure to extraneous matters that were highly prejudicial to the defendant.[4] Hence, *Commonwealth* v. *Fidler*, 377 Mass. 192 (1979), and cases that follow it[5] are controlling. The situation here in fact mirrors *Fidler*, where a juror having personal knowledge, not in evidence, remarked during deliberations that "Fidler had been shot in Charlestown a month earlier" and that "[t]hey . . . almost got him," *id.* at 199, 194. It is immate-

---

[3]According to the jury foreman's testimony during individual voir dire, the juror had remarked that she knew of the defendant and that the defendant was a friend of another individual, Eric Brown, who the defense alleged had shot the murder victim several months prior to the murder and who was also possibly the person who committed the murder. The juror further remarked that Brown had dated her niece and had fathered a child by the niece. The jury foreman claimed the juror also said that the defendant and Brown were members of the same gang and that "she was afraid to walk up the street" because of gangs.

[4]We are not in this case dealing with the dismissal of a juror for personal reasons or "for other good cause" unconnected to the case under G. L. c. 234, § 26B. See *Commonwealth* v. *Connor*, 392 Mass. 838, 844-845 (1984).

[5]See, e.g., *Markee* v. *Biasetti*, 410 Mass. 785 (1991); *Fitzpatrick* v. *Allen*, 410 Mass. 791 (1991).

rial under such circumstances whether the extraneous matter was communicated by one of the jurors, as was the case here and in *Fidler*, or by a third person. *Id.* at 200.

Drawing upon established precedent, the *Fidler* court held that, once questions are raised about jury exposure to extraneous matters, the judge may query individual jurors to determine whether such matters have in fact found their way into the jury room; but the judge shall not inquire what, if any, influence they may have had on the jury's deliberation process. See *id.* at 196, citing *Woodward* v. *Leavitt*, 107 Mass. 453, 466 (1871); *Harrington* v. *Worcester, Leicester & Spencer St. Ry.*, 157 Mass. 579, 581-583 (1893); *Mattox* v. *United States*, 146 U.S. 140 (1892). If the judge finds that extraneous facts have penetrated the jury's deliberations, the judge "must focus on the probable effect of the extraneous facts on a hypothetical average jury." *Fidler, supra* at 201. *Cutler* v. *Cuffie*, 414 Mass. 632, 637 (1993).

That is not the process that was followed here. In his voir dire of jurors, the judge determined that the juror had imparted certain knowledge she had about the defendant and about his possible affiliation with gangs. Then he asked each juror whether he or she could still judge the case solely on the evidence and not on the extraneous information. In so doing, he committed error. See *Woodward* v. *Leavitt*, 107 Mass. at 466; *Commonwealth* v. *Fidler*, 377 Mass. at 201; *Fitzpatrick* v. *Allen*, 410 Mass. 791, 795-796 (1991) ("There can be *no inquiry* concerning the actual impact of extraneous matter on the jury" [emphasis supplied]).

Upon determining that highly prejudicial extraneous information concerning the defendant had seeped into the jury room, we think the remedy of a new trial was required — whether the judge applied the test in *Commonwealth* v. *Fidler* requiring the Commonwealth to show beyond reasonable doubt that the extraneous matter would not have prejudiced the defendant before a "hypothetical average jury," 377 Mass. at 201; or held instead that, given the nature of that information, the sitting jury could not "fairly be

modeled by a 'hypothetical average jury.' " *Markee* v. *Biasetti*, 410 Mass. 785, 789 (1991).[6]

Throughout the trial, defense counsel scrupulously attempted to avoid and have excluded all testimony concerning "gangs" or "groups." Over repeated (and sustained) objections, the assistant district attorney continued his efforts to develop the theme.[7] Hence, a seed — albeit small — may already have been planted in some jurors' minds, in spite of the judge's admonitions, that this crime was gang-connected. Without doubt, that seed was watered and fertilized by information concerning the defendant and Eric Brown that the juror improperly related to her fellow jurors. For reasons analogous to those discussed in *Commonwealth* v. *Wolcott*, 28 Mass. App. Ct. 200, 207-210 (1990) (concerning error in admitting police officer's testimony on gang activity to establish motive and intent), this information "had a toxic element [that] made an unspoken appeal to fears of gang violence . . ." and thus gave rise to "[a] doubt . . . whether the poison might not have infected the [trial]." *Id.* at 210-211. Stated another way "the extraneous evidence may have [had] a gripping quality and asking the jury to disregard it may be tantamount to asking the jury to ignore that an elephant has walked through the jury box." *Commonwealth* v. *Flebotte*, 34 Mass. App. Ct. 676, 680 (1993), *S.C.*, 417 Mass. 348 (1994).

The judgments are reversed, and the verdicts are set aside.

*So ordered.*

---

[6]The judge obviously sensed the gravity of the situation. He remarked at one point to counsel, "I think the case is over. I don't think there is anything I can do to save this case, frankly."

[7]Given that actual proof of a gang connection was never established, the latitude allowed the assistant district attorney in this regard should be significantly narrower at any retrial. See *Commonwealth* v. *Wolcott*, 28 Mass. App. Ct. 200, 209-210 (1990).