Cowin, J.
This personal injury action was tried to a jury and a verdict for the defendants was returned by the jury on December 9, 1996. The jury found for the plaintiff Louis Manocchio against defendants Leslie Burns Jr. and Traffic Markings, Inc. in the sum of $135,000 but the jury assessed plaintiffs negligence at 55%. The plaintiffs have filed a motion for new trial claiming that the verdict was against the weight of the evidence and that the verdict was the product of juror misconduct.
As to the weight of the evidence, the Court concludes that there was sufficient evidence to support the verdict of the jury. The contention that the verdict was the product of juror misconduct raises more serious concerns.
Following the return of the verdict, the Court received information that extraneous matter may have influenced the deliberations of the jury. Accordingly, hearings were held on December 17, 1996, January 2, January 23, and February 3, 1997. At these hearings, the individual defendant, Leslie C. Burns, Jr., (Burns) and all jurors but one testified.[1] The parties were also given an opportunity to present briefs and argument to the Court. The Court makes the following findings, based upon a consideration of the testimony of the jurors and Bums and an assessment of their credibility.
On the morning of the last day of trial, the juror who was later appointed foreperson, Richard Davis (Davis), encountered the defendant Burns outside the Norfolk County Courthouse. A conversation occurred between the two in violation of the Court’s repeated admonitions that there be no mention of the case outside the courtroom and that there be no contact between any party and a juror. This conversation was to the effect that the case had dragged on for a long time and that the plaintiff had been offered $400,000 by the insurance company to settle the case. Contrary to the testimony of defendant Burns, there was no mention in this conversation of gross negligence or any other substantive issue.
Shortly after the conversation, Davis repeated the content of it to juror Maiy Irving (Irving) in the jury room before the jurors entered the courtroom. This was further in violation of the instructions of the Court. Davis said to Irving that Burns had said: ‘This has been going on too long. The plaintiff has been offered $400,000 by the insurance company to settle.” At the time of this conversation, all the jurors were in the jury room. However, only two other jurors heard any of said conversation. Those two jurors were Barbara Fronzen (Fronzen) and Valerie Cohen (Cohen). Fronzen heard Davis say that he had seen Bums and then, realizing that the conversation was improper, Fronzen made an effort not to listen any further. She *534 did hear Davis say something about a settlement, perhaps the number mentioned was half a million, but she was not certain about the amount involved. Cohen heard Davis say that he had talked to Burns and that Burns had said “something” about some previous court case or trial and something about a settlement. There was no further discussion of this conversation by the jurors.
DISCUSSION
Once the party moving for new trial demonstrates that the jury have been exposed to extraneous matter, the burden shifts to the nonmoving party to show that there was no reasonable likelihood that the extraneous matter would have affected the verdict of a hypothetical average jury. Markee v. Biasetti, 410 Mass. 785, 788-89 (1991).[2]
Based on the above findings, I further find that four members of the jury were exposed to extraneous matter. The foreperson, Davis, had an actual conversation with defendant Bums. Davis related the conversation to Irving. Cohen and Fronzen heard fragments of this conversation, but had no sense of the actual content. Thus, eight people heard nothing of the conversation and clearly could not have been influenced by it. The two who heard only fragments could not have been influenced because they did not hear enough information for there to be any effect upon their deliberations.
As to Davis and Irving, whatever impact the conversation might have had was of dubious meaning in the abstract. But in the circumstances of this case, I find that there is no reasonable likelihood that the extraneous matter (the conversation) affected the verdict. The logical impact of the information conveyed by Burns to Davis and by Davis to Irving was that the defendant believed that this case was worth a substantial amount of money, i.e., that the plaintiff had a “good case.”
It would not appear to be the reaction of any reasonable jury to punish the plaintiff for not accepting a $400,000 offer, particularly by the unusual means of finding plaintiff 55% negligent. The much more likely reaction was that a jury would have assumed the defendant’s offer had a rational basis and the jury would have been influenced thereby to return a verdict for the plaintiff. The jury, however, did exactly the opposite. The jury affixed damages at a number unrelated to the $400,000 figure, thereby disregarding that information. The jury also found contributory negligence. Both the amount of the damages and the finding of contributory negligence are clearly inconsistent with any verdict that could be construed as having been influenced by the improper communication. Thus, the number heard in the communications is unrelated to the verdict and the finding of contributory negligence is clearly unrelated to the extraneous information. Accordingly, the communication which would appear in the normal course to favor the plaintiff apparently did not have any influence and there is no reasonable likelihood the jury were affected by the extraneous matter. Fitzpatrick v. Allen, supra, at 795.[3]
To the extent that the standard to be applied is the impact on a hypothetical average jury, I conclude that the conversation would not have an impact on a hypothetical average jury. The extraneous information here, a statement by a party, was unlike the type of material involved in cases such as Markee v. Biasetti, supra and Fitzpatrick v. Allen, supra. The present case thus does not concern evidence supplemental to that received in court which the Supreme Judicial Court has held prevents considering the impact on the hypothetical jury and requires a new trial.
ORDER
For the foregoing reasons, the plaintiffs motion for new trial is DENIED.

Juror Stephanie Church was unable to attend the hearing at which she was scheduled to testify. The parties agreed that it was unnecessary to hear her testimony.

It is recognized that juror testimony regarding the degree of influence the extraneous matter had on the juror’s mind is not permitted. Fitzpatrick v. Allen, 410 Mass. 791, 795-96 (1991).

This conclusion is buttressed by the fact that agreement of only 10 of the 12 jurors is required in a civil case (so more them two would have had to be influenced by the communication — and only two even heard it).