Grabau, J.
Introduction and Procedural History
The Plaintiff, Eula Romano (Romano), Administratrix of the Estate of Valencia Romano, brought this motor vehicle, wrongful death action on behalf of the Estate of her deceased daughter, Valencia Romano, and the two surviving daughters of Valencia Romano. The matter was tried to a jury from September 17, 2003, until September 23, 2003, when the jury returned a verdict in favor of the Defendant, Scott Watson (Watson).
On September 26, 2003, counsel for the Plaintiff, Attorney John J. Twomey (Attorney Twomey), delivered a handwritten memorandum addressed to the Session Clerk informing the Court that:
Two jurors in the above cited case have contacted me by phone to report an incident during their deliberations in the jury room. They both independently stated that a juror research [sic] “law” on the internet and brought printouts of his research into the jury room ... I wish to know how Judge Grabau wishes to proceed.[1]
Attorney Twomey’s memorandum indicates that he “notified defendant’s counsel and the Court through you [the session clerk] by telephone on Wed 9/24/03.”
On September 26, 2003, Attorney Twomey filed a motion entitled “Emergency Motion for New Trial” pursuant to Mass.R.Civ.P. 59 with a supporting Affidavit signed by him. Twomey.[2] Attorney Twomey’s Affidavit contains details regarding conversations that he had with the two jurors. Attorney Twomey states that two jurors independently informed him that a deliberating juror named Shane “brought printouts of his research (relating to motor vehicle accidents) into the juror’s room for use in their deliberations; that he placed the printouts of his research prominently on the table in the jury room to be read by members of the jury, and he discussed the results of his research with several members of the jury.”
*462 On October 9, 2003, Attorney Twomey filed a Memorandum in support of Plaintiffs Emergency Motion for New Trial which was supported by an Affidavit of a juror named Pat Harris (Harris). Harris’ Affidavit was prepared by Attorney Twomey.
Harris’ Affidavit does not include some of the contentions made by Attorney Twomey. In Paragraph 3 of her Affidavit, Harris writes that a juror named Shane “announced to the jury that he had conducted research on the Internet regarding the legal issues before the jury in the case and he left a printout of the material he had researched on the table. Along with the exhibits that had been introduced.” Harris Affidavit avers that “all the material,” the exhibits and the material Shane had brought in, were passed around the table for review of the jurors. Harris at Paragraph 5 of her Affidavit avers that Shane and three other jurors, who she identifies by name, were overheard by another juror, ElieDowkins, “discussing the case notwithstanding our instructions not to discuss the case outside the jury room.”
On or about October 9, 2003, Defendant Scott Watson filed an Opposition to Plaintiffs Purported “Emergency Motion” for New Trial, Defendant’s Conditional Motion Under Rule 50, and Memorandum of Law.[3]
On October 14, 2003, Watson filed an additional pleading entitled “Defendant’s Motion to Strike Juror Affidavit.”[4] Watson contends that the Harris Affidavit violates the Supreme Judicial Court’s prohibition on ex parte juror contact. Watson also contends that Attorney Twomey violated the mandates of the Supreme Judicial Court by conducting unrestricted, repeated post-trial interviews of jurors. Watson further contends that Attorney Twomey solicited and prepared Harris’ Affidavit and impermissibly inquired into the thought process of the juror. Watson moves to strike the Harris Affidavit because the Affidavit describes “feelings” of a juror and fails to demonstrate juror misconduct or an extraneous influence on the jury.[5]
On October 17, 2003, Attorney Twomey filed Plaintiffs Opposition to Defendant’s Motion to Strike Juror Affidavit.[6] In paragraph 3 of the Plaintiffs Opposition, Attorney Twomey contends that “Plaintiffs counsel has sought to report the jurors’ allegations to the Court and he has not been engaged in post-trial investigations.”
On October 25, 2003, I conducted a hearing on Romano’s Emergency Motion for New Trial. Attorney Twomey informed the Court that on September 24, 2003, he returned the calls and had three conversations with juror Harris. Attorney Twomey never “got back” to the second juror. Either on September 25 or September 26, Harris agreed to sign an affidavit. Harris informed Attorney Twomey that she did not read the research material brought in by the other juror identified as Shane. Attorney Twomey drafted the Affidavit signed by Harris and went to her place of employment where Harris signed the Affidavit.[7]
Counsel for the Plaintiff contends that a juror brought “prejudicial extraneous material” into the jury room that were [sic] designed to influence the jury in its deliberations, she is entitled to a new trial. “Once it is determined that the jury have been exposed to extraneous matter, the burden shifts to the nonmoving parly to show that there was no reasonable likelihood that the juiy were influenced by the extraneous matter.” Fitzpatrick v. Allen, 410 Mass. 791, 795 (1991) (new trial ordered where extraneous material consisted of a medical reference book); Commonwealth v. Hunt, 392 Mass. 28 (1984) (after reaching a unanimous verdict but before the verdict was recorded, discussion of the defendant’s criminal record by a juror was an overt factor but did not necessitate a new trial where there was overwhelming evidence of guilt); Markee v. Biasetti, 410 Mass, at 785, 788-89 (1991) (new trial required where two jurors took an unauthorized view).
In a criminal case, the Commonwealth, the non-moving party, must show beyond a reasonable doubt that no prejudice resulted from the introduction of an extraneous influence. “In civil matters, however, a lesser standard of ‘no reasonable likelihood of prejudice’ is more appropriate.” Fitzpatrick, 410 Mass, at 795.
Discussion — Post-Verdict Investigations & Extraneous Influences
The issue before me is whether I should exercise my discretion to conduct an investigation into the possibility that extraneous influences had an effect upon the jury. “When confronted with allegations of irregularity in the jury proceedings, the trial judge has broad discretion to determine what manner of hearing, if any, is warranted.” U.S. v. Campbell, 684 F.2d 141, 151 (D.C.Cir. 1982), quoting U.S. v. Wilson, 534 F.2d 375, 379 (D.C.Cir. 1976); Commonwealth v. Dixon, 395 Mass. 149, 151-52 (1985).
A post-trial, non-evidentiaiy hearing was conducted to allow the attorneys to argue whether I should, in the exercise of my discretion, conduct an investigation into the alleged juror misconduct to determine whether Romano’s Emergency Motion for New Trial should be allowed.
The cases in this Commonwealth do not distinguish extraneous influences from extraneous evidence, information or facts. The terms are often used interchangeably. Commonwealth v. Kamara, 422 Mass. 614, 615-16 (1996); Fitzpatrick, 410 Mass, at 794. The Supreme Judicial Court has indicated that for purposes of evaluating the need to set aside a verdict and order a new trial, the source of the extraneous influence, whether a juror or third parly, is of no consequence. Commonwealth v. Fidler, 377 Mass. 192, 199-200 (1977).
*463 The rule in this Commonwealth is that a juror is permitted to testify about “the existence of extraneous influences which, judged by their probable effect on a hypothetical juiy, may have prejudiced a party . . Cassamasse v. J.G. Lamotte & Son, 391 Mass. 315, 317-18 (1984), quoting Fidler, 377 Mass, at 196-201. A juror, however, is not permitted to testify about the mental processes of the juiy during deliberations such as “testimony that the jurors did not follow the judge’s instructions, or that they misunderstood the legal consequences of their verdict or that they were influenced by matters not in evidence is not permitted to impeach a verdict.” Fidler, 377 Mass, at 195-98; Hunt, 392 Mass. 28, 39-40; Cassamasse, 391 Mass, at 317-18.
Based on the foregoing, I strike Paragraph 6 of Attorney Twomey’s Affidavit.[8] Attorney Twomey permitted Harris to inform the Court of her feelings about the extraneous material that the other juror brought to the deliberations and her opinion that the material “had some influence” with the juiy decision. I find that Attorney Twomey intentionally included this information to influence the Court despite his knowledge that it was impermissible to inquire into the mental process of Harris or the other jurors.
On the record before me, and my evaluation of the trial evidence, I find that Watson has met his burden by demonstrating that an evidentiary hearing to examine the deliberating jurors is not necessary and that Romano’s Emergency Motion for New Trial should be denied. The Harris Affidavit does not allege that the jury was misinformed about Massachusetts automobile negligence law or that it misapplied the law on which it was instructed. Markee, 410 Mass, at 788-89; Commonwealth v. Dixon, 395 Mass. 149, 150-51 (1985). Moreover, the trial evidence supports the verdict in favor of Watson.
The juiy deliberated for two days. The jurors requested re-instruction on the law of automobile negligence and the elements that Romano had to prove by the fair preponderance of the credible evidence. (Exhibits P & Q.) The jurors also requested further instruction on comparative negligence. (Exhibit R.) It is to be assumed that the jurors applied the law the Court instructed them on, and that they applied the law to the facts they found.
Conclusion
I rule that there is no reasonable likelihood of prejudice to Romano due to the extraneous information. Justice requires that the verdict stand.
Order
For the above reasons, and in the exercise of my discretion, Romano’s Emergency Motion for New Trial is DENIED.

This document was marked Exhibit “A” during the October 25, 2003 hearing.

Papers numbered 25 and 26.

The docket does not reflect that this document was date stamped or given a paper number.

Paper number 40.

On October 21, 2003, Watson filed a Supplement to Defendant Watson’s Opposition to Motion for New Trial and/or Conditional Cross Motion for Entry of Judgment Pursuant to Rule 50. The issue raised by Watson in this pleading is the effect that Romano’s expert witness, Lt. Steven Benanti of the Massachusetts State Police, had on other Massachusetts State Troopers who were summonsed to testify on behalf of Watson. Watson intended to call the State Trooper who had conducted the accident reconstruction investigation on Route 1 in Danvers and another State Trooper who happened to be traveling in his own car with his spouse two cars behind Watson. Both of these witnesses would have testified favorably on Watson’s behalf. This issue has been referred by me to the Attorney General’s Office for investigation.

Paper number 41.

I infer that Attorney Twomey discussed the language and contents of the Affidavit with Harris before drafting the Affidavit for her.

Paper No. 26. Attorney Twomey informs the Court that, “Both jurors stated that they felt the plaintiff did not receive a fair trial as the result of the juror’s actions.”