A Superior Court jury convicted the defendant of rape and indecent assault and battery on a person over fourteen years of age. The convictions were based on evidence that the victim awakened to find the defendant, the victim's downstairs neighbor, in her bed licking her anus and vagina. On appeal, the defendant claims the judge erred when he (1) permitted the Commonwealth's criminalist to testify that saliva could have been present on genital swabs taken from the victim, even though the test she used detected none, and (2) discharged the only Hispanic juror after the evidence closed. We affirm.
1. Expert testimony. The defendant filed a motion in limine to exclude certain scientific evidence at trial, including the results of tests performed on swabs taken from the exterior of the victim's vagina. The judge denied the motion, in part, allowing a criminalist to explain that although there was no saliva detected, that meant only that the minimum amount of saliva necessary to register on the test was not present in the sample. In other words, the criminalist testified that there could have been saliva present, but not enough for a positive test result. The defendant claims error in the admission of this evidence arguing that "[t]he introduction of 'inconclusive' biological evidence was prejudicial error in this case where the expert's testimony went beyond mere inconclusive results and permitted the jury to speculate about the defendant's relationship to a nonexistent sample."
"Whether evidence is relevant in any particular instance, and whether the probative value of relevant evidence is outweighed by its prejudicial effect, are questions within the sound discretion of the judge." Commonwealth v. Dunn, 407 Mass. 798, 807 (1990). Because the defendant raised the issue in a motion in limine, we review for prejudicial error. Commonwealth v. Grady, 474 Mass. 715, 724-725 (2016). The defendant relies on Commonwealth v. Nesbitt, 452 Mass. 236, 254 (2008), for the proposition that inconclusive test results should not have been admitted. There, the court reasoned that inconclusive results from an analysis comparing a defendant's known DNA sample to DNA obtained from other evidence could unfairly suggest to the jury that the defendant was linked to the unknown sample and that a better sample would confirm that link. Id. The Commonwealth counters that the criminalist's testimony was probative of the thoroughness of the investigation. See Commonwealth v. Bowden, 379 Mass. 472, 485-486 (1980) (failure to conduct certain tests can raise reasonable doubt).
We need not decide whether the judge abused his discretion in admitting the testimony because we conclude that the defendant suffered no prejudice. The criminalist did not mention the defendant or connect him in any way to the test results. The testimony was brief, it was not repeated in the prosecutor's closing argument, and the judge properly instructed the jury that they were to consider only the evidence introduced at trial and not to speculate. Moreover, the fact that no saliva was detected was helpful to the defendant and trial counsel referenced the forensic testing in his closing. In the end, as trial counsel conceded in argument, "[t]his [was] a case about credibility and the credibility of witnesses." Here, the jury had ample opportunity to assess the victim's credibility during her direct and cross-examination. Accordingly, we are confident that the criminalist's testimony "did not influence the jury, or had but very slight affect." Commonwealth v. Canty, 466 Mass. 535, 545 (2013), quoting Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994).
2. The discharged juror. At the close of the evidence, the prosecutor informed the judge that he had received information that a juror had been discussing the case with her coworkers. According to the prosecutor, the mother of another assistant district attorney in her office reported that juror number thirteen had told coworkers that she was a juror on a rape case and had been selected because, like the defendant, she is Hispanic. When questioned by the judge, juror number thirteen initially denied speaking to anyone about the case. Following a telephone conversation between the prosecutor and the juror's supervisor, who confirmed the initial report, the investigating officer, who had listened in on the conversation, testified to the statements made by the supervisor. Juror number thirteen then admitted, under oath, that she told her supervisor that she was likely selected because she is Hispanic. She maintained, however, that she had not disclosed the nature of the case. After hearing the evidence, the judge discharged the juror, reasoning that "[i]t's not simply because she gave false testimony to the Court, although I do find that [ ] she did. But in addition to that, it manifests itself by causing me to doubt her compliance with my orders and causing me to doubt the veracity of her general responses throughout this trial as to whether or not she has refrained from violating the Court's order."
"The court shall have the discretionary authority to dismiss a juror at any time in the best interests of justice." G. L. c. 234A, § 39. We review the dismissal of a juror for an abuse of discretion or error of law, with deference to the trial judge who had the advantage of a "face to face evaluation of the witnesses and the evidence at trial" (quotations omitted). Commonwealth v. Peppicelli, 70 Mass. App. Ct. 87, 93-94 (2007). A judge has a duty to ensure the defendant's right to a jury that can set aside their own biases, properly weigh the evidence, and follow the judge's instructions. See Commonwealth v. Andrade, 468 Mass. 543, 547-548 (2014). Here, the record supports the conclusion that juror number thirteen failed to follow the judge's instructions and, when the judge inquired directly about the extraneous communication, juror number thirteen responded falsely. The judge was therefore justified in concluding, "I do not [ ] credit [ ] the truthfulness of her responses or non-responses to my inquiries every day as to whether or not she has communicated with anyone about the case or [ ] engaged in any independent research or investigation." In these circumstances, where it is apparent the juror disregarded the judge's instructions and then attempted to conceal her failure to comply, we discern no abuse of discretion in the decision to discharge the juror in the interests of justice.
The defendant's claim that the dismissal of the only Hispanic juror violated his Constitutional right to a jury of his peers is also unavailing. Because the defendant never raised the ethnic or racial composition of the jury or the discharged juror at trial, he has waived the issue and we review only for a substantial risk of a miscarriage of justice. See Commonwealth v. McCaster, 46 Mass. App. Ct. 752, 763-764 (1999). First, the claim lacks factual support. We cannot conclude from the record before us that juror number thirteen was the only Hispanic juror. Second, the discharge of juror number thirteen was unrelated to her Hispanic heritage. As set forth above, juror thirteen's failure to follow the judge's instructions was a race neutral reason for the judge's order. Cf. Commonwealth v. Jones, 477 Mass. 307, 324 (2017). Accordingly, we see no substantial risk that justice miscarried.[2]
Judgments affirmed.

There is no merit to the defendant's unpreserved claim that the judge did not conduct an adequate hearing before discharging juror number thirteen. The investigating officer testified regarding the information received from the juror's supervisor and trial counsel was afforded an opportunity to cross-examine. The judge twice questioned the juror under oath regarding the extraneous communication. Nothing more was required.